## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *DORA MOODY,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 1:12-cv-281-GZS* |
| | ) | |
| *CAROLYN W. COLVIN,* | ) | |
| *Acting Commissioner of Social Security,*[1] | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy as of her date last insured for SSD benefits, June 30, 1982. The plaintiff seeks reversal and remand on the basis that the administrative law judge erred in several respects, which she contends were not harmless, in determining her residual functional capacity ("RFC"). *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 8) at 5-14. I find no reversible error and, accordingly, recommend that the court affirm the decision.

This case returns to this court following an April 26, 2010, reversal of a May 23, 2008, adverse decision and remand to the commissioner for further proceedings. *See* Record at 13-20, 590-92. Following remand, the administrative law judge convened an October 15, 2010, hearing

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 14, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

during which he heard the testimony of the plaintiff as well as a medical expert, Peter B. Webber, M.D., and a vocational expert, Jane A. Gerrish. *See id.* at 534-73.

On November 9, 2010, the administrative law judge issued the decision at issue, finding in relevant part, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), that the plaintiff met the insured status requirements of the Social Security Act through June 30, 1982, Finding 1, Record at 523; that, through her date last insured, she had a severe impairment of a right shoulder injury, Finding 3, *id.*; that, through her date last insured, she retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could not do work that required use of the right arm at or above shoulder level, Finding 5, *id.* at 524; that, through her date last insured, considering her age (35 years old, defined as a younger individual, on her alleged disability onset date), education (limited), work experience (transferability of job skills immaterial), and RFC, jobs existed in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 526-27; and that she, therefore, was not disabled from February 28, 1981, her alleged disability onset date, through June 30, 1982, her date last insured, Finding 11, *id.* at 528.  The Appeals Council declined to assume jurisdiction of the case after remand, *id.* at 510-13, making the decision the final determination of the commissioner, 20 C.F.R. § 404.984(a)-(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff contends that the administrative law judge's RFC determination is unsupported by substantial evidence for three reasons: he (i) failed to address her claim that, as of her date last insured, she suffered side effects of pain medication, (ii) wrongly rejected a retrospective opinion of examining physician Frank A. Graf, M.D., and failed even to address Dr. Graf's retroactive RFC assessment, and, (iii) in the absence of any expert opinion supporting the RFC assessed, impermissibly relied on his own layperson's interpretation of the raw medical evidence. *See* Statement of Errors at 5-12.

She adds that these errors were not harmless because, while Gerrish testified that a person with a hypothetical RFC matching that found by the administrative law judge could perform the jobs of order caller, parking lot attendant, and sandwich board carrier, she also stated that (i) the claimed side effects of medication would preclude the performance of all of those jobs, and (ii) a limitation to occasional reaching and handling (as found by Dr. Graf) would preclude the performance of the order caller and parking lot attendant jobs. *See id*. at 13. She adds that, in

3

any event, the sandwich board carrier job is eliminated by Gerrish's flawed testimony as to the number of available jobs.  *See id.* at 14.

At oral argument, counsel for the commissioner conceded that the administrative law judge's reliance on the job of sandwich board carrier was misplaced.  He contended that there was no error in the administrative law judge's assessment of medication side effects, handling of the Graf opinion, or determination of RFC.  However, he argued that, even if there were an error in the handling of the Graf opinion or the determination of RFC, it was harmless given the vocational expert's testimony that a person with a limitation to occasional reaching and handling could perform the job of parking lot attendant one-handed.[3]

I conclude that the administrative law judge adequately handled the plaintiff's claimed side effects and supportably discounted the Graf disability opinion.  While he erred in ignoring the Graf RFC assessment and in assessing the plaintiff's RFC based on the raw medical evidence, those errors are harmless.  Even with Dr. Graf's upper extremity restrictions, the plaintiff could have performed the job of parking lot attendant one-handed.  In addition, the error in failing to address the Graf RFC is harmless for a second reason: it addresses only the plaintiff's current condition, not her condition as of her remote date last insured.

### A.  Claimed Side Effects of Medication

The plaintiff alleges disability beginning on February 28, 1981, *see* Record at 521, following an accident in which she slipped and fell while working as a security guard at a paper mill in Madison, Maine, causing her "clavicle [to] c[o]me up and out," *id.* at 539-40.  Her injury, diagnosed as a Grade II separation of the right acromioclavicular ("AC") joint, was "initially treated conservatively, but . . . remained so painful and unstable" that she opted for surgical

---

[3] Counsel for the commissioner acknowledged that, although the vocational expert also testified that the job of order caller could be performed one-handed, she testified on cross-examination that use of a person's non-dominant hand could cause significant difficulty achieving an acceptable pace.  *See* Record at 572.

treatment in April 1981.  *Id*. at 434.  The surgery, an open reduction and internal fixation of the right AC joint with a distal claviculectomy, was performed by L.K. Henderson, M.D., on April 16, 1981.  *See id*.

In an outpatient follow-up note dated December 9, 1981, Dr. Henderson noted that the plaintiff was "still not doing well[,]" with "pain at the proximal end of her right clavicle[,] pain along the length of the clavicle pulling up into her anterior neck and maximum pain over the anterior tip of the acromion especially if she flexes or abducts her shoulder."  *Id*. at 442.  He added, "This is the first time since her injury and since her distal claviculectomy done last May [sic] that she has had enough passive motion in the shoulder for me to make a fairly clear cut diagnosis of impingement syndrome involving the anterior acromion and the supraspinatus tendon."  *Id*. at 442.  Dr. Henderson recommended that she undergo an anterior acromionectomy, *see id*., which he performed on January 26, 1982, *see id*. at 447.

In an outpatient follow-up note dated March 10, 1982, Dr. Henderson stated:

> This is the first time since I met the woman that she said that things are coming along pretty well now.  She does not have anywhere near as much pain in the shoulder as she used to have.  She is developing a fairly functional range of motion but still has a lot of pain at 60 degrees of flexion or abduction, and she can't touch her left shoulder yet without a lot of pain in the [acromion or] the base of the neck on the anterior right side.

*Id*. at 452.  Dr. Henderson noted that the plaintiff was to continue physical therapy twice a week and could now progress to active exercises.  *See id*.

The plaintiff testified that Dr. Henderson told her to apply for disability because of her pain and mental confusion caused by pain medication that he prescribed.  *See id*. at 25, 27.  She stated that the medication made her "fuzzy," "dizzy," and/or "lightheaded" and made it difficult for her to think, but that, if she took a lower dosage, the pain was excruciating and she could not bear it.  *See id*. at 27, 33-34, 544.  She testified that, following her injury, the paper mill offered

5

her an alternate job answering telephones and writing down messages, but Dr. Henderson told

the mill manager that she could not do it because she could not write down messages.  *See id*. at

30-31, 542.

The plaintiff contends that the administrative law judge failed even to address her

claimed side effects of medication.  *See* Statement of Errors at 3, 5, 11.  I disagree.

The administrative law judge acknowledged that the plaintiff had testified that "the pain

medications she took produced side effects of lightheadedness and difficulties with thinking."

Record at 525.  However, he determined that her claimed symptoms – which implicitly included

her claimed medication side effects – were not credible to the extent inconsistent with his RFC

determination.  *See id*.  He explained, in relevant part:

> Although the [plaintiff] alleges that her shoulder pain prevented her from
> engaging in work activity, an emergency room report dated January 11, 1982
> shows that the [plaintiff] required treatment for an eye injury that she sustained
> while removing tile from a wall in her home.  Such activity is inconsistent with
> her allegation of disabling shoulder pain.  There is no indication that the [plaintiff]
> was maintained on high doses of narcotic pain medication, or that she had chronic
> complaints of uncontrolled pain.
>
> After May 1982, there is no evidence of ongoing medical treatment for the
> [plaintiff's] shoulder injury.  The earliest medical evidence of record after 1982 is
> from 1990, and pertains to a motor vehicle accident that occurred in 1989.  In
> correspondence dated October 1990, the attorney representing the [plaintiff] in
> that matter stated that, prior to that accident, the [plaintiff] 'was active and
> enjoyed numerous social and recreational activities,' which is clearly at odds with
> her allegation that she has been experiencing chronic pain and disability since
> 1982.  Her attorney also argued that, although unemployed, the [plaintiff's]
> earning capacity had been 'substantially reduced' by the motor vehicle accident,
> thereby indicating that the [plaintiff] was able to work before her recent injuries.

*Id*. at 525-26 (citations omitted).

These observations, all of which accurately summarize the underlying record, *see id*. at

407, 409, 434-36, 442-43, 445-47, 452, 454-59, supply substantial evidence in support of the

administrative law judge's credibility finding generally and with respect to the plaintiff's claimed

side effects of medication in particular.  None of Dr. Henderson's available records reflects the prescription of pain medication, let alone a notation of concerns regarding medication side effects.  *See id*. at 434-36, 442, 445-47, 452.[4]

While it is true, as the plaintiff's counsel noted at oral argument, that Dr. Webber testified that the plaintiff's ability to function would have been significantly restricted not only by lack of adequate use of her dominant upper extremity but "also by the fact that she was taking varying degrees of pain medication[,]" *id*. at 558-59, Dr. Webber evidently assumed the truth of her allegations that she was taking such medication.  As discussed above, the administrative law judge supportably found otherwise.

In short, the administrative law judge adequately addressed and resolved the issue of claimed side effects of medication.

### B.  Handling of Graf Opinion and RFC Assessment

The record contains two sets of reports and accompanying RFC assessments by orthopaedic surgeon Frank A. Graf, M.D., one dated March 25, 2008, and the other dated August 25, 2010.  *See id.* at 481-91, 697-705.  In the 2008 set, based on a review of medical history and an orthopaedic examination, Dr. Graf addressed the plaintiff's then-current functional restrictions and work capacity.  *See id*. at 481-91.  In the 2010 set, again based on a review of medical history and an orthopaedic examination, he focused on her 1981 work-related shoulder injury.  *See id*. at 697-705.  He stated in his 2010 report:

---

[4] I am mindful that (i) the plaintiff testified that Dr. Henderson continued to treat her during the period between 1982 and 1989, and (ii) she and her counsel stated that they had been unable to locate Dr. Henderson or obtain a complete copy of his treatment records.  *See* Record at 27, 556-57.  Still, the plaintiff, who applied for SSD benefits in 2006, 25 years after her alleged onset date of disability, *see id*. at 13, bore the burden of adducing sufficient evidence to enable an assessment of her RFC as of her remote date last insured, *see, e.g., Sawyer v. Colvin*, No. [] 1:12-cv-231-JAW, 2013 WL 1760534, at *4 (D. Me. Mar. 30, 2013) (rec. dec., *aff'd* Apr. 24, 2013) ("[T]he burden remains with the claimant at the stage of the process in which RFC is determined[.]").  The administrative law judge, hence, permissibly judged her credibility based on the available records.

> It is the opinion of this examiner that this patient has been disabled for all employment since her January 4, 1981 injury. For a period of four years, she received Workers' Compensation benefits. Her treating physician, Dr. Henderson[,] never released her for work following the 1981 accident. Her shoulder injury was complicated by problems with the Kirschner wire internal fixation requiring repeat procedures. She is right hand dominant. In addition to her right shoulder injury in 1981, she experienced a low back injury. Her treatment was dominated by the problems at the right shoulder but symptoms of low back pain continued throughout that period of time and on into the present.

*Id*. at 701. In his accompanying RFC assessment, Dr. Graf assessed a number of functional restrictions, including limitations to occasional reaching, handling, fingering, and feeling resulting from limited motion, numbness, and tingling in the plaintiff's right arm. *See id*. at 704. Above his signature appears a typed block stating:

> Based on my education, training and experience and my evaluation of Ms. Moody including treatment of her and review of her records and history, the foregoing represents my professional opinion as to Dora Moody's physical limitations from 6/1/82 to the present.

*Id*. at 705.

The administrative law judge gave no weight to Dr. Graf's opinion that the plaintiff was disabled from all work as of 1981, explaining:

> Dr. Graf did not see the [plaintiff] until 27 years after her alleged disability onset date. The determination of disability is an issue reserved for the Commissioner, and Dr. Graf's opinion is highly speculative and unsupported by the contemporaneous medical evidence.

*Id*. at 526. He did not separately address Dr. Graf's RFC assessment. *See id*.

The plaintiff assails the handling of Dr. Graf's 2010 report and RFC assessment, arguing that (i) the fact that an issue is reserved to the commissioner is not a basis for rejecting a medical source opinion regarding it, (ii) the administrative law judge failed even to address the Graf RFC assessment, and (iii) the administrative law judge lacked the medical training and background to question the validity of the retrospective opinion of Dr. Graf. *See* Statement of Errors at 7-9.

8

She adds that Dr. Graf reliably based his opinion on (i) his knowledge and experience as an orthopaedic surgeon, (ii) his review of contemporaneous medical treatment records, (iii) his medical findings following two separate examinations of the plaintiff, and (iv) the fact that Dr. Henderson never released her for work.  *See id.* at 9.

I find no error in the administrative law judge's rejection of the Graf disability opinion.

As the administrative law judge observed, *see* Record at 525, the available contemporaneous evidence reflects that, on January 11, 1982, just prior to her second shoulder surgery, the plaintiff was able to hang wall tile, *see id*. at 443, and on March 10, 1982, following that surgery, Dr. Henderson noted that she had functional improvement in her shoulder use and deemed her able to progress to active physical therapy exercises, *see id*. at 452.  Dr. Henderson's available records do not indicate that (i) he prescribed pain medication, (ii) he or the plaintiff had concerns about medication side effects, or (iii) he considered the plaintiff disabled from the alternative mill job or from any other work or encouraged her to apply for disability.  *See id*. at 434-36, 442, 445-47, 452.  After May 1982, there is a gap in medical treatment records until 1990.

In addition, as the administrative law judge pointed out, in 1990 an attorney representing the plaintiff in litigation stemming from a 1989 automobile accident made a statement "clearly at odds with her allegation that she has been experiencing chronic pain and disability since 1982[,]" namely, that prior to the 1989 accident, she "was active and enjoyed numerous social and recreational activities[.]"  *Id*. at 526 (quoting *id*. at 409).  Finally, as the administrative law judge observed, *see id*., the plaintiff's failure to apply for disability benefits until 2006, 25 years after

9

the alleged onset date, combined with her less than compelling explanation for the delay, further diminished the credibility of her claim that she had been unable to work since 1981.[5]

The administrative law judge was competent, without benefit of expert assistance, to determine that the Graf opinion did not square with other evidence of record and, accordingly, was speculative. *See, e.g., Anderson v. Astrue,* No. 1:11–cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material and whether there are discrepancies between a treating source's opinion and his or her underlying progress notes.") (citation and internal quotation marks omitted).[6]

The administrative law judge's failure to address the separate Graf RFC assessment was error. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted). However, "failure by the ALJ to articulate or explain the weight given to the reports of the examining or consultative physicians can be harmless error." *Stoll v. Astrue*, No. 1:10cv01326 DLB, 2011 WL 2036712, at *10 (E.D. Cal. May 23, 2011).

---

[5] The plaintiff testified at her 2010 hearing that she delayed filing for 25 years because her worker's compensation proceedings were traumatic. *See* Record at 553. However, as the administrative law judge noted, *see id*. at 526, that did not prevent her from engaging in litigation stemming from her 1989 automobile accident, *see id*. at 407-09.

[6] The administrative law judge not only explained his handling of the Graf disability opinion but also provided what amount to good reasons for its rejection, which is beyond what he was required to do with respect to an opinion of an expert who is not a "treating source." *See* 20 C.F.R. § 404.1527(c)(2) (commissioner will "always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion").

In this case, the error was harmless for two reasons. First, despite the typed paragraph purporting to set forth Dr. Graf's opinion that all of the assessed limitations existed from June 1, 1982, the assessment clearly is a current one, describing functional limitations from conditions from which the plaintiff did not suffer as of June 1, 1982, such as knee impairments and a stroke. *See* Record at 524, 702-04. Second, the Graf limitations on which the plaintiff relies to demonstrate that any RFC error was not harmless – that she could only occasionally reach and handle as a result of limited motion, numbness, and tingling in her right arm – would not prevent her from performing the job of parking lot attendant. *See* Statement of Errors at 13; Record at 704.

The vocational expert present at the plaintiff's hearing initially testified that a limitation to only occasional reaching and handling would eliminate both the order caller and parking lot attendant jobs. *See id.* at 567. However, on further questioning by the administrative law judge, she stated that the jobs "would typically be done with one arm." *Id.* at 570. While she agreed with the plaintiff's counsel that the parking lot attendant job is described in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") as requiring bilateral arm use and calls for driving automobiles, she noted that the DOT description was "very outdated." *Id.* at 571.[7]

"This court has repeatedly held that evidence of one job suitable for a claimant that exists in the national economy in significant numbers is enough to meet the commissioner's burden at Step 5." *McLaughlin v. Astrue*, No. 1:11-cv-365-JAW, 2012 WL 3042944, at *4 n.4 (D. Me. July 5, 2012) (rec. dec., *aff'd* July 25, 2012). The plaintiff did not suggest, either at hearing or in

---

[7] Tellingly, on rebuttal, the plaintiff's counsel offered no rejoinder to the argument of the commissioner's counsel that, even with the Graf limitation to occasional reaching and handling, the plaintiff could perform the job of parking lot attendant.

her statement of errors, that the parking lot attendant job did not exist in significant numbers. *See* Record at 563-72; Statement of Errors at 12-14.

For these reasons, there was no error in the rejection of the Graf disability opinion and no reversible error in the failure to address the Graf RFC assessment.

### C.  Support for Assessed RFC

The plaintiff finally seeks reversal and remand on the basis that the administrative law judge's RFC finding was not derived from any medical expert opinion of record but, instead, from his impermissible lay interpretation of the raw medical evidence.  *See* Statement of Errors at 5-7, 10-12.  Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record."  *Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990).

At oral argument, counsel for the commissioner acknowledged that no medical opinion evidence supports the RFC determination.  He did not argue that the administrative law judge could make a permissible lay determination of limitations imposed by the plaintiff's shoulder condition in 1982.  Rather, he contended that (i) there was no error because the administrative law judge merely resolved a conflict in medical opinion evidence, rejecting the Graf opinion in favor of the opinions of Dr. Webber and Disability Determination Services nonexamining consultant Robert Hayes, D.O., in a report dated September 12, 2006, that there was insufficient evidence to assess the plaintiff's RFC as of her remote date last insured, *see* Record at 370, 561, (ii) any error was harmless because the administrative law judge assessed an RFC more restrictive than the evidence supports, and, (iii) alternatively, any error was harmless because the

12

relevant Graf restrictions would not have prevented the performance of the job of parking lot attendant.

As the plaintiff's counsel rejoined at oral argument, the administrative law judge did not resolve a conflict in medical opinion evidence. He did not agree with Drs. Webber and Hayes that there was insufficient evidence to assess the plaintiff's RFC as of her remote date last insured. Rather, he assessed an RFC that differed from that of the only medical expert who purported to assess the plaintiff's RFC as of that date, Dr. Graf.

Nor is it clear that the administrative law judge assessed an RFC more favorable to the plaintiff than the evidence supports, a proposition for which counsel for the commissioner cited *Gonsalves v. Astrue*, Civil No. 09-181-BW, 2010 WL 1935753 (D. Me. May 10, 2010) (rec. dec., *aff'd* June 16, 2010). *See Gonsalves*, 2010 WL 1935753, at *6 (RFC error is "harmless when [the] finding [is] more favorable to [the] plaintiff than [the] evidence appears to support"). Dr. Webber testified that the plaintiff had "definite restrictions of her capabilities" as of her date last insured, *see* Record at 558-59, and the administrative law judge evidently agreed, deeming the condition severe and assessing limitations flowing therefrom, even though those limitations find no support in any medical expert opinion of record.

Nonetheless, the error is harmless in that, as discussed above, even assuming that the administrative law judge had adopted the Graf restrictions on upper extremity use, the plaintiff would have remained capable of performing the job of parking lot attendant.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of June, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge